IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RICHARD A. COLEMAN, SR.** | : Bankruptcy Case No. 01-5226 |
| Appellant, | : |
| | : |
| v. | : Civil No. L-05-246 |
| | : |
| **LORI S. SIMPSON** | : |
| Appellee. | : |

## MEMORANDUM

Between May 1996 and September 1998, Monica Lynn Coleman ("Mrs. Coleman") transferred $1,043,386.28 to her husband, *pro se* Appellant Richard A. Coleman ("Mr. Coleman" or "Appellant"). On October 29, 2004, after a trial on the merits, the Bankruptcy Court "avoided" the transfers under Maryland law, finding that Mrs. Coleman was insolvent when she made, or was rendered insolvent by, the transfers, and that she did not receive "fair consideration" for them. The Bankruptcy Court (Judge E. Stephen Derby) entered judgment in favor of the trustee for Mrs. Coleman's bankruptcy case, Appellee Lori S. Simpson ("Simpson" or "Appellee"), in the amount of $1,043,386.28. This appeal followed. For the reasons stated below, the Court will, by separate Order, AFFIRM the decisions of the United States Bankruptcy Court and DIRECT the Clerk to CLOSE the case.

**I.    BACKGROUND**

Mrs. Coleman was the defendant in a celebrated securities fraud case. On April 16, 2002, Mrs. Coleman, who in 1999 had been barred by the SEC from working in the securities and investment business, plead guilty to five felony counts of securities fraud. State of Maryland v.

---

[1] Mrs. Coleman deposited the funds into a bank account held by Mrs. Coleman and Mr. Coleman as tenants by the entireties.

Monica Lynn Coleman, No. 100362045 (Cir. Ct. Baltimore City). The Circuit Court for Baltimore City sentenced her to 15 years imprisonment, with all but one year suspended.

This appeal involves Mrs. Coleman's bankruptcy petition. On May 7, 1999, Mrs. Coleman filed a voluntary petition in bankruptcy in the United States Bankruptcy Court for the District of Maryland, seeking a Chapter 7 discharge of her debts. Simpson was appointed as Trustee.

On May 7, 2001, Simpson sued Mr. Coleman to recover transfers totaling $1,043,386.28 that Mrs. Coleman made to her husband between May 1996 and September 1998. Simpson contended that the transfers were fraudulent within the meaning of 1 U.S.C. §§ 544, 550, Maryland's Uniform Fraudulent Conveyance Act, Md. Code Ann., Comm. Law § 15-201 et seq. ("MUFCA"), and Md. Code Ann., Fam. Law § 4-301 (d)(2).

To avoid the transfer of a debtor's property under 11 U.S.C. § 544(b), the trustee must prove that the transfer is avoidable under applicable state law. Section 15-204 of MUFCA provides: "Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without fair consideration." Md. Code Ann., Comm. Law § 15-204.

A trial on the merits in U.S. Bankruptcy Court took place on December 9, 2002. Judge Derby found that the transfers had been made without fair consideration, and on October 29, 2004, he entered judgment in favor of Simpson in the amount of $1,043,386.28.

On November 8, 2004, Mr. Coleman filed his Notice of Appeal. Mr. Coleman raises three issues in his appeal:

2

(i) Whether the Bankruptcy Court erred in granting judgment in favor of Simpson because Mrs. Coleman received fair consideration for the transfers?

(ii) Whether the Bankruptcy Court erred in denying Mr. Coleman's motion to compel discovery responses from the Trustee?

(iii) Whether the Bankruptcy Court erred in refusing to issue a writ to permit Mrs. Coleman to attend the trial?

The Court will address each issue in turn.

## II. STANDARD

"On appeal from the bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*." In re Zegeye, 2005 WL 147403, at *3 (D. Md. Jan. 21, 2005).

## III. ANALYSIS

### A. The Bankruptcy Court Properly Granted Judgment in Favor of Simpson.

On appeal, Mr. Coleman contends that Mrs. Coleman did receive fair consideration for the transferred funds.[2] Consideration is fair if:

> In exchange for the property or obligation, as a fair equivalent for it and in good faith, property is conveyed or an antecedent debt is satisfied; or

> The property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared to the value of the property or obligation obtained.

Md. Code Ann., Comm. Law § 15-203.

In this case, the Bankruptcy Court determined that "the uncontradicted evidence shows that [Mr. Coleman] provided no value in exchange for the Debtor's [Mrs. Coleman's] transfers."

---

[2] Mr. Coleman does not dispute that Ms. Coleman was indeed insolvent when she made, or was rendered insolvent by, the transfers. Accordingly, the only issue before the Court is whether Ms. Coleman received fair consideration for the transferred funds.

3

Mr. Coleman has provided no evidence to demonstrate otherwise. Indeed, Mr. Coleman testified in his deposition that he did not provide value in exchange for the transfers.

Mr. Coleman asserts that he used the transferred money to pay some of Mrs. Coleman's creditors, arguing that such use of the funds constitutes fair consideration as satisfaction of an antecedent debt. He provides no evidence, however, that he actually paid any of Mrs. Coleman's creditors. For example, in his deposition, Mr. Coleman testified that he could not remember why he withdrew $127,300.00 in checks from the entireties account prior to the filing of Mrs. Coleman's bankruptcy petition. He also acknowledged that the "for" line on the checks failed to describe how the proceeds were used.

Mr. Coleman's conclusory assertions, without evidentiary support, are insufficient to demonstrate that Mrs. Coleman received fair consideration for the transferred funds. Accordingly, the Bankruptcy Court properly entered judgment in favor of Simpson.[3]

**B.    The Bankruptcy Court Properly Denied Mr. Coleman's Motion to Compel.**

Thirty days before the discovery deadline, Mr. Coleman mailed and faxed a number of discovery requests to Simpson. Simpson did not respond. On December 2, 2002, shortly before trial, Mr. Coleman filed an emergency motion to compel the discovery responses.

Under Bankruptcy Rules 7033, 7034, and 9006(f), Simpson had 33 days to respond to

---

[3] On appeal, Mr. Coleman also contends that res judicata barred the underlying action. The principles of res judicata prevent relitigation of a claim that was previously adjudicated on the merits against the same parties. See Grausz v. Englander, 321 F.3d 467, 472 (4th Cir. 2003). Mr. Coleman has pointed to no such previously adjudicated claim. Accordingly, his claim is without merit.

Mr. Coleman's discovery requests,[4] but the discovery deadline fell only 30 days after the requests were made. Because Mr. Coleman did not give Simpson enough time to answer them, the requests were untimely. On that basis, Judge Derby denied Mr. Coleman's emergency motion to compel. Mr. Coleman contends that Judge Derby's ruling was incorrect.

Decisions regarding discovery in bankruptcy proceedings are reviewed under an abuse of discretion standard. See In re Carp, 340 F.3d 15, 22 (1st Cir. 2003); Efron v. Gutierrez, 226 B.R. 305, 316 (D. P.R. 1998); see also In re ASI Reactivation, Inc., 934 F.2d 1315, 1324 (4th Cir. 1991  Mr. Coleman has failed to demonstrate such abuse of discretion.[5]

First, Judge Derby's ruling was correct on the merits. Mr. Coleman served the discovery requests too close to the discovery deadline. When he served the requests, he did not ask for an extension of the discovery deadline.

In addition, Mr. Coleman does not point to any useful information that he hoped to obtain from Simpson. Indeed, the Trustee was not a fertile source of discoverable facts. Simpson had no involvement in the transfers. All facts concerning Mrs. Coleman's finances, the transfers, and Mr. Coleman's finances are within the knowledge of Mr. Coleman and his wife. Moreover, as

---

[4] Under Bankruptcy Rules of Procedure 7033 and 7034, answers to interrogatories and written responses to documents requests shall be served "within 30 days after the service of the request." Bankruptcy Rule of Procedure 9006(f) states that if an act is to be completed within a time frame calculated from the date of service of a paper, and the paper is served by mail or other electronic means, three days are added to the prescribed period. Bankr. R. Proc. 9006; Fed. R. Civ. Proc. 5(b)(2)(D).

[5] As a preliminary matter, the Court notes that Mr. Coleman never filed a notice of appeal as to the Bankruptcy Court's Order Denying Defendant's Emergency Motion to Compel; nor did Mr. Coleman seek leave to appeal the interlocutory order. Federal Rule of Bankruptcy Procedure 8001 requires the filing of a notice of appeal accompanied by a motion for leave to appeal whenever a litigant seeks to secure appellate review by the district court of an interlocutory order.

discussed above, Mr. Coleman's attempts to justify the transfers border on sophistry, and Simpson proved her case by pointing out the obvious.

### C. The Issue of Whether the Bankruptcy Court Erred in Failing to Permit Mrs. Coleman to Attend the Trial is Not Ripe for Review.

Mr. Coleman contends that the Bankruptcy Court erred in failing to permit Mrs. Coleman to attend the trial. His arguments in this regard also suffer from fatal weaknesses.

Mr. Coleman never requested that Mrs. Coleman be available to appear as a witness. He could have subpoenaed Mrs. Coleman to appear at trial, but he did not do so. Mr. Coleman does not state why his wife's testimony would have assisted his case. Although Mrs. Coleman was incarcerated, Mr. Coleman does not contend that he was unable to confer with his wife about the case. Mr. Coleman, therefore, did not raise this argument in the trial court.

"Generally, issues that were not raised in the [lower] court will not be addressed on appeal." Holland v. Big River Corp., 181 F.3d 597, 605 (4th Cir. 1999). Exceptions are made only where the error is "plain" and the court's refusal to consider it "would result in a miscarriage of justice." Nat'l Wildlife Fed. v. Hanson, 859 F.2d 313, 318 (4th Cir. 1985). Such is not the case here.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, the Court will, by separate Order, AFFIRM the decisions of the United States Bankruptcy Court and DIRECT the Clerk to CLOSE the case.

Dated this ___ day of July, 2005.

Benson Everett Legg
Chief Judge